# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 12-138** |
| **SONNY ALLEN** | **SECTION "K"(1)** |

## <u>ORDER AND REASONS</u>

Before the Court is Defendant Sonny Allen's Motion for Judgment of Acquittal (R. Doc. 232) and Motion for New Trial (R. Doc. 233).  Having reviewed the motions, memoranda, record, and relevant law, the Court DENIES the motion for reasons stated herein.

## I.    BACKGROUND

On June 6, 2013, Defendant Sonny Allen was charged in a sixteen-count Superseding indictment with the following offenses:

i.    Conspiracy to Possess and to Possess with the Intent to Distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), and 846 (Count 1);

ii.    Conspiracy to possess firearms in furtherance of a drug trafficking offense in violation of 21 U.S.C. § 924(o) (Count 2);

iii.    Knowingly and intentionally distributing a quantity of cocaine base ("crack") on February 22, 2013, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 11);

iv.    Knowingly and intentionally distributing a quantity of cocaine base ("crack") on February 27, 2013, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 12);

v.    Knowingly and intentionally distributing a quantity of cocaine base ("crack") on March 6, 2013, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 15); and

1

      vi.     Knowingly and intentionally distributing a quantity of cocaine base ("crack") on June 4,

              2013, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 16).

Superseding Indictment, R. Doc. 35, 1-7.

      On November 3, 2014, the matter proceeded to trial. The Government called seventeen witnesses over the course of three days, and at the close of the Government's case, the Defendant made an oral motion for judgment of acquittal under Federal Rules of Criminal Procedure Rule 29 urging that the Government's case was insufficient to carry its burden of proof beyond a reasonable doubt. The Court reserved ruling on the motion, but allowed Defendant to renew his motion at the conclusion of trial.  At the conclusion of trial, the Defendant again urged the motion with oral reasons and the Court reserved its decision and directed counsel submit written reasons for the motion.  The Defendant submitted a written motion for acquittal under Rule 29 in addition to a motion for new trial under Federal Rule of Criminal Procedure Rule 33.

      The jury returned a verdict on November 6, 2014 of guilty against the Defendant on Counts 1, 11, 12, 13, and 14.[1]  The jury acquitted the Defendant on Count 2, which charged him with being a participant in a conspiracy to possess firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(o).

## II.    LEGAL STANDARDS

### A.    Motion for Acquittal

A motion for judgment of acquittal challenges "the sufficiency of the evidence to convict." *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007)(quoting *United States v.*

---

[1]Counts 13 and 14 of the verdict form referred to a Redacted Superseding Indictment that omitted two charges pertaining to co-defendants not at trial. Counts 13 and 14 are the substantive equivalent of Counts 15 and 16 in the original Superseding Indictment.

*Lucio,* 428 F.3d 519, 522 (5th Cir.2005)). Rule 29(a) of the Federal Rules of Criminal Procedure provides that after the government closes its evidence or after the close of all evidence, on a defendant's motion, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." As the Supreme Court stated in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See also United States v. Hope,* 487 F.3d at 227–28.  The court determines "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995)(citation omitted). "[I]f the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld." *Lucio,* 428 F.3d at 522.

    In viewing the evidence in the light most favorable to the prosecution, the court must "consider the countervailing evidence as well as the evidence that supports the verdict in assessing sufficiency of the evidence." *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011)(quoting *United States v. Brown,* 186 F.3d 661, 664 (5th Cir.1999)); *see United States v. Peterson*, 244 F.3d 385, 389 (5th Cir.2001) ("All evidence is considered, not just that supporting the verdict, but the evidence need not conclusively disprove alternatives; the jury is free to choose among reasonable constructions of the evidence.").  The court must also draw upon "*reasonable* inferences from the evidence to support the verdict." *United States v. Percel,* 553 F.3d 903, 910 (5th Cir.2008) (quoting *United States v. McDowell,* 498 F.3d 308, 312 (5th Cir.2007)) (emphasis added).  Though the court may not "weigh[] the evidence or assess[] the credibility of witnesses," *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996)(citations

3

omitted), "[a] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Moreland,* 665 F.3d 137, 149 (5th Cir.2011) (quoting *United States v. Rojas Alvarez*, 451 F.3d 320, 333-34 (5th Cir. 2006)).

Nevertheless, "[t]he evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Mendoza*, 522 F.3d 482, 488 (5th Cir. 2008) (quoting *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir.1998)). "Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." *United States v. Vasquez*, 677 F.3d 685, 692 (5th Cir.2012). "But the evidence presented must allow the jury to find every element of the offense beyond a reasonable doubt." *United States v. Uvalle–Patricio*, 478 F.3d 699, 701 (5th Cir.2007) (internal quotation and citation omitted).

### B.    Motion for New Trial

Rule 33 states that, upon the Defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33; *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004). "The burden of demonstrating that a new trial is warranted 'in the interest of justice' rests on the defendant." *United States v. McElwee,* 2010 WL 235007, *2 (W.D.La. Jan. 15, 2010) citing *United States v. Soto–Silva,* 129 F.3d 340, 343 (5th Cir.1997). Rule 33 motions are not favored and are viewed with great caution. *United States v. Blackthorne,* 34 F.3d 449, 452 (5th Cir.2004). "The grant of a new trial is necessarily an extreme measure, because it is not the role of the judge to sit as a thirteenth member of the jury." *United*

*States v. O'Keefe,* 128 F.3d 885, 898 (5th Cir.1997); *but see United States v. Robertson,* 110 F.3d 1113, 11120 n. 11 (5th Cir.1997).

"Motions for new trial are based either on the grounds that the verdict was against the weight of the evidence or that some error was committed by the court or the prosecution which substantially affects the rights of the accused." *United States v. Simms*, 508 F. Supp. 1188, 1202 (W.D. La. 1980).  In the Fifth Circuit, "the generally accepted standard is that a new trial ordinarily should not be granted unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *United States v. Wright,* 634 F.3d 770,775 (5th Cir. 2011); *see Wall*, 389 F.3d at 466.

Unlike the Rule 29 motion where the evidence must be viewed in a light most favorable to the verdict, in determining whether to grant a Rule 33 motion, the Court "may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005)(citing *Robertson*, 110 F.3d at 1117).  "[T]he decision to grant or deny a motion for new trial based on the weight of the evidence is within the sound discretion of the trial court." *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997). Thus, the court has broad discretion to grant a new trial "in the interest of justice." *United States v. Scroggins*, 379 F.3d 233 (5th Cir.2004), *vacated on other grounds*, 543 U.S. 1112, 125 S.Ct. 1062, 160 L.Ed.2d 1049 (2005); *United States v. Antone*, 603 F.2d 566 (5th Cir. 1979).  Deference is given to the district court because it actually observed the demeanor of witnesses and their impact on the jury. *Wall,* 389 F.3d at 465; *O'Keefe,* 128 F.3d at 893. "[E]vidence which merely discredits or impeaches a witnesses' testimony does not justify a new trial." *United States v. Blackthorne*, 378 F.3d 449, 455 (5th Cir. 2004)(citation omitted).  A new trial may be appropriate where the evidence only tangentially supports a guilty verdict and

5

the evidence "preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred." *Tarango*, 396 F.3d at 672 (citations omitted). However, the court must not usurp the jury's function "or simply set aside a jury's verdict because it runs counter to result the district court believed was more appropriate." *Id.* at 672 (citations omitted).

## III.     DISCUSSION

In his Motion for Judgment of Acquittal, Defendant does not challenge his convictions for the four distribution charges but alleges that the evidence was insufficient as to the conspiracy charge in Count 1 to sustain his conviction and must be acquitted as to Count 1. Presenting substantially the same argument set forth in his motion for acquittal, the Defendant argues in his Motion for New Trial that, due to the insufficiency of the evidence, the weight of the evidence preponderates so heavily against the verdict that a miscarriage of justice occurred and that the Court should grant a new trial on this basis.

### A.      Elements of Narcotics Conspiracy

To prove conspiracy under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that: "(1) an agreement existed between two or more persons to violate federal narcotics law, (2) the defendant knew of the existence of the agreement, and (3) the defendant voluntarily participated in the conspiracy." *United States v. Ochoa,* 667 F.3d 643, 648 (5th Cir. 2012).

The Government need not show that a defendant entered into an express agreement to show that the defendant engaged in a conspiracy: "[A] tacit, mutual agreement with common purpose, design, and understanding will suffice." *United States v. Daniels*, 723 F.3d 562, 575 (5th Cir. 2013) *modified in part on rehearing,* 729 F.3d 496 (5th Cir.2013) (citing *United States v. Zamora,* 661 F.3d 200, 209 (5th Cir.2011)(internal quotation marks omitted)). "Concert of

action can indicate agreement and voluntary participation"; "[t]he surrounding circumstances may establish knowledge of a conspiracy"; and, more importantly, "[a] conspiracy agreement may be tacit, and the trier of fact may infer an agreement from circumstantial evidence." *United States v. Quiroz-Hernandez*, 48 F.3d 858, 866 (5th Cir. 1995), *as modified on reh'g* (May 8, 1995)(quoting *United States v. Thomas,* 12 F.3d 1350, 1356–57 (5th Cir. 1994)).[2]  Indeed, "[t]he agreement, a defendant's guilty knowledge and a defendant's participation in the conspiracy all may be inferred from the 'development and collocation of circumstances.' " *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998)(quoting *United States v. Maltos,* 985 F.2d 743, 746 (5th Cir.1992)).; *see also United States v. Ayala*, 887 F.2d 62, 67-68 (5th Cir. 1989). "Although to be guilty a defendant must voluntarily participate in the conspiracy, he need only play a minor role in the overall scheme." *Ayala*, 887 F.2d at 67-68 (citing*United States v. Gonzales,* 866 F.2d 781, 788 (5th Cir.1989)).  "[A] defendant need not know all of the specific details of the conspiracy, need not know all of the other conspirators, and need not have ever physically touched any of the drugs involved in the conspiracy."  *Daniels,* 723 F.3d at 575 (citation omitted).  Moreover, "[o]nly slight evidence is needed to connect an individual to an illegal conspiracy once the [government] has produced evidence of that conspiracy." *United States v. Thomas*, 12 F.3d 1350, 1359 (5th Cir. 1994)(citation and internal quotation marks omitted).

The Government also need not prove an overt act to show participation in a conspiracy. *United States v. Bermea,* 30 F.3d 1539, 1552 (5th Cir.1994); *see United States v. Turner*, 319 F.3d 716, 721 (5th Cir. 2003). Though not sufficient alone to prove participation in a conspiracy,

---

[2] *See also United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994) ("Among the factors that may be considered by the factfinder in determining whether a defendant is guilty of committing a drug conspiracy crime are concert of action, presence among or association with drug conspirators, and evasive and erratic behavior." (citation and internal quotation marks omitted)).

presence and association may be considered by the jury along with other circumstantial evidence in finding that the defendant participated in a conspiracy. *See United States v. Chavez,* 947 F.2d 742, 745 (5th Cir.1991). However, "[a] defendant may not . . . be convicted of a drug conspiracy merely by evidence that he associated with other drug conspirators or by evidence that places the defendant in 'a climate of activity that reeks of something foul.'" *Posada-Rios*, 158 F.3d at 857-58 (citation omitted).

When weighing the testimony, "[a]s long as it is not factually insubstantial or incredible, the uncorroborated testimony of a co-conspirator, even one who has chosen to cooperate with the government in exchange for non-prosecution of leniency, may be constitutionally sufficient evidence to convict." *Turner*, 319 F.3d at 721 (5th Cir. 2003)(quoting *United States v. Westbrook,* 119 F.3d 1176, 1190 (5th Cir.1997))(internal quotation marks omitted); *see Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994)("We have held that a guilty verdict may be sustained if supported only by the uncorroborated testimony of a coconspirator, even if the witness is interested due to a plea bargain or promise of leniency, unless the testimony is incredible or insubstantial on its face."). "Testimony is incredible as a matter of law only if it relates to facts that the witness could not possibly have observed or to events which could not have occurred under the laws of nature." *United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994)(citations omitted)

**B.    Evidence Presented at Trial**

At trial, the Government presented evidence from various witnesses and co-conspirators in support of the charges brought against the Defendant.  Officer Brian Pollard testified that he witnessed individuals conducting hand-to-hand narcotics transactions in the 1200 block of Simon Bolivar Avenue where Sonny Allen's grandmother lived over a period of years. These

individuals were Gie Preston, Lionel Allen, Burnell Allen, Mark Rayfield, and Emanuel Casame, all of whom were indicted in the Superseding Indictment along with Sonny Allen. (R. Doc. 35, 1-2).  Officer Pollard did not testify as to Eugene Allen or Sonny Allen who were also indicted under the conspiracy charge in Count 1 of the Superseding Indictment.  However, Agent Hank Meyer of the Bureau of Alcohol, Tobacco, Firearms, and Explosives testified that he observed confidential informant Appolonia Connor conduct controlled purchases of crack cocaine that he arranged from Sonny Allen.  The Defendant and the Government stipulated to amounts of 3.4 grams, 3.4 grams, 3.9 grams, 1.9 grams, and 8.4 grams sold in connection with the controlled purchases conducted by Agent Meyer. (Stipulations for Trial, R. Doc. 213).  At the time of those purchases, Agent Meyer testified that he did not see Gie Preston or Burnell Allen at the residence.  Agent Meyer described Sonny Allen's grandmother's house as "ground zero" for distribution of narcotics.  Appolonia Connor testified that she purchased crack cocaine through controlled purchases but was not "in business" with the co-conspirators.

Nukema Frith testified that she has known Sonny and Burnell since she was 12 years old and had observed Burnell Allen, Sonny Allen, and Gie Preston selling cocaine near the Allens' grandmother's house for years. She also testified that she purchased crack from all three while they were in the same vicinity and that she never saw them compete for customers. Brandy Dwyer testified that she observed Gie Preston, Burnell Allen, and Sonny Allen sell crack on various occasions between 2011 and 2012 "all day, every day" around the same location. Keoka Wright, who went to school with Sonny Allen, testified that she saw Sonny Allen, Gie Preston, and Burnell Allen "briefly meet and talk to crackheads" daily during 2008.

Eugene Allen testified that he sold crack around the grandmother's house along with Sonny Allen and that they "each took turns" selling crack to customers. Mark Rayfield testified

that Burnell Allen, Gie Preston, and Sonny Allen would sell narcotics near each other around the Allens' grandmother's house. Rayfield stated that Burnell Allen would give him crack to sell on consignment. Rayfield also testified that the Allens left their stashes in the backyard of the grandmother's house while Gie Preston left his stash in another location.  Also, according to Rayfield, the three alleged co-conspirators stole cash and drugs from each other frequently. Emanuel Casame testified that Sonny Allen, Burnell Allen, and Gie Preston sold narcotics around the Allens' grandmother's house and would buy cocaine from Sonny Allen for resale; he also stated that Burnell Allen would sell cocaine to Sonny Allen and Gie Preston. He testified that, on at least two occasions, Gie Preston, Burnell Allen, and Sonny Allen pooled their money together to buy cocaine from Isaac Thompson, a narcotics distributer.  Finally, Casame testified that Sonny Allen and Burnell Allen possessed firearms occasionally and was the only witness who provided any testimony as to Sonny Allen's possession of a firearm. Isaac Thompson testified that between 2011 and 2012 he sold Sonny Allen between half and one ounce (18-56 grams) of cocaine every two weeks, which even through conversion to crack cocaine, yielded an equal amount of crack cocaine in weight.

> C.      **Analysis**

Defendant argues that the evidence the Government presented was insufficient evidence of an agreement forming a conspiracy. He asserts that, instead, the evidence supports the conclusion that the Defendant was an "independent contractor" who sold crack cocaine without being a part of the conspiracy.  In support, Defendant points to Mark Rayfield's testimony that Sonny Allen, Burnell Allen, and Gie Preston stole money and drugs from each other and did not share in profits as evidence of the lack of agreement. He avers that he cannot be convicted simply based on the fact that he sold drugs in proximity to other Co-Defendants. He also points

to the lack of testimony as to an express agreement between the alleged co-conspirators from various witnesses.

Alternatively, the Defendant urges that he was merely in a buyer-seller relationship with the members of the conspiracy but not a member of the conspiracy itself. The defendant consistently relies on *United States v. Goines*, 988 F.2d 750, 764 (7th Cir. 1993), to support the proposition that the evidence was insufficient to find the existence of an agreement to which Sonny Allen voluntarily joined.  In *Goines,* the alleged co-conspirator was found to be in a "buyer-seller" relationship with the members of the conspiracy. *Id.* Evidence showed that the defendant was delivered cocaine on one instance (and was said to be "in debt" to the supplier) and attempted to purchase cocaine on another occasion various occasions from a conspirator; other evidence showed that he sold cocaine only to a relative of an informant, unrelated to the conspiracy. *Id.* Thus, the *Goines* court concluded that the defendant was not part of a conspiracy. *Id.*

In this case, the Defendant suggests that the Court should view Sonny Allen's relationship to the drug conspiracy as being a buyer-seller relationship where Sonny Allen would purchase drugs from the conspirators while maintaining independence from the conspiracy.  He cites to Isaac Thompson's testimony that Sonny would purchase cocaine from him independently in support and the fact that Officer Pollard testified that none of the Allens were present at the time of Gie Preston's arrest.  Although Emanuel Casame testified that Sonny Allen, Gie Preston, and Burnell Allen pooled money together to purchase crack cocaine from Isaac Thomspon, the Defendant argues that such testimony should be disregarded as incredible and unbelievable.  He argues that Casame's cooperation with the Government and the fact that he alone testified that

Sonny Allen possess firearms, which may have formed the basis of the Defendant's acquittal on the conspiracy charged in Count 2, discredits his testimony.

In response, the Government argues that simply because an alternative inference—that Sonny Allen was an "independent contractor"—may exist does not mean the verdict was not supported by the evidence.  The Government cites to the testimony of Keoka Wright, Nukema Frith, Mark Rayfield, Eugene Allen, Emanuel Casame, and Isaac Thompson as support for the existence of an agreement and of Sonny Allen's participation in the agreement.

Although the Defendant argues that he was an independent contractor or merely in a buyer-seller relationship, both arguments are based on the assumption that sharing in profits would indicates a true agreement and conspiracy exists in this case.  However, the conspiracy alleged in Count 1 of the Superseding Indictment was to join together to possess and sell crack cocaine, sharing mutual support and protection in a certain area. Though the illicit activity here involves pecuniary gain, an agreement for purposes of a conspiracy need not have profit-sharing motive.  What the co-conspirators did not share in profits they shared in the ability to sell crack cocaine individually in the same area (the Allens' grandmother's house) without direct competition.  Moreover, there need not be a "*formal* agreement to violate narcotics laws" for a conspiracy to exist. *United States v. Mitchell*, 484 F.3d 762, 769 (5th Cir. 2007)(emphasis added).  Indeed, "the structure among the defendant drug dealers defies a simple and straightforward description" in many drug conspiracies, which, "by their very nature, . . . are loosely-knit ensembles." *Goines*, 988 F.2d at 759.

Testimonial evidence sufficiently established that this tacit agreement existed and that Sonny Allen both knew and voluntarily participated in that agreement.  The evidence from numerous witnesses, including co-conspirators, demonstrates that Sonny Allen sold crack

alongside the other co-conspirators for a period of years—evidence which demonstrates agreement rather than mere presence or association with the co-conspirators. Sonny Allen, Burnell Allen, and Gie Preston stashed drugs in the same area (in or around the grandmother's house). Even if they stole from each other, testimonial evidence showed that they did not compete for customers. The three co-conspirators sometimes bought drugs from each other and frequently bought drugs from the same supplier: Burnell Allen sold drugs to Sonny Allen and both Sonny and Burnell Allen purchased cocaine from Isaac Thompson. Without weighing his testimony, Emanuel Casame testified that, on at least two occasions, the three co-conspirators also pooled their money together to purchase cocaine from Thompson.

Whether Sonny Allen knew or was present at the time of Gie Preston's arrest or during other surveillance by police officers, evidence of selling crack cocaine in the same area, buying from the same distributor, and stashing their drugs in the same location all evidence agreement to work in concert with each other. Unlike the defendant in *Goines* who merely purchased drugs on a few occasions and sold to one person only, Sonny Allen actively participated on numerous occasions to purchase, store, and sell cocaine with Burnell Allen, Gie Preston, and the other co-conspirators. *See Mitchell*, 484 F.3d at 769 (5th Cir. 2007)(finding no buyer-seller arrangement existed where on numerous occasions conspirators travelled together and made jointly agreed-upon arrangements to purchase and transport drugs from the same source in order to subsequently sell them). From evidence of these concerted actions, a rational jury could infer that Sonny Allen and the other alleged co-conspirators did form and voluntarily participate in a tacit agreement. Therefore, the Court concludes that there was sufficient evidence from which a jury could have found beyond a reasonable doubt that Sonny Allen conspired to possess with intent to distribute crack cocaine as charged in Count 1.

In the Defendant's Rule 33 motion, the Defendant primarily attacks the credibility of co-conspirator, Emanuel Casame. The Defendant infers that the jury must have determined Casame's testimony was unreliable because only Casame testified that Sonny Allen ever possessed firearms yet the jury acquitted Sonny Allen of the conspiracy to possess firearms charge in Count 2.  Notwithstanding the fact that there are other elements than simple possession charged in that particular crime, the Court is not required to (nor believes it should) make Defendant's leap of logic into the jury's deliberative process.  Fifth Circuit case law is clear that a co-conspirator's testimony alone may be sufficient to convict, despite any expected benefit from the Government for testifying. The Court finds his testimony credible, as he testified to facts he could have witnessed; testimony from Isaac Thompson and Mark Rayfield corroborate certain facts from his testimony and further lend it credibility. Thus, in addition to the reasons stated above, the Court finds that the evidence was not so insufficient as to create a miscarriage of justice and preponderate against the verdict.  Finding no exceptional circumstances warranting a new trial in this matter and exercising its discretion, the Court finds that the Defendant has not presented sufficient grounds for a granting of a new trial.

Accordingly,

**IT IS ORDERED** that the Defendant Sonny Allen's Motion for Judgment of Acquittal (R. Doc. 232) and Motion for New Trial (R. Doc. 233) are **DENIED.**

New Orleans, Louisiana, this _13th_ day of _____April_____, 2015.


_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**